LOUISA DOOLITTLE, Respondent, *v.* ANNA STONE, as Administratrix, etc., Appellant.

*Supreme Court, Fifth Department, General Term, December 30, 1889.*

1. *Witness. Section* 829.—In an action against an administrator, testimony by plaintiff that the intestate, upon her request, handed to her a tin box, which, after she had examined and made a list of its contents, she returned to him to be accounted for as her agent, is inadmissible under section 829 of the Code.

2. *Evidence. Account-book.*—The entries in an account-book kept by a party are not admissible in his own favor, unless his adversary has offered other entries made in the same book, or during the same period of time, or in continuation of the same account, or unless some reference is made in one to the other account.

3. *Appeal. Evidence.*—The error in admitting incompetent testimony will not be disregarded on a review, where a material issue, involved in the case and upon which such testimony bears, is not established by other competent evidence beyond fair dispute.

Appeal from a judgment entered upon the report of a eferee. The defendant is the administratrix of the estate of her late husband, Joel Stone, who died intestate the 20th day of April, 1885. The plaintiff's husband died in 1855, and from him she inherited an estate of about $24,000, and as early as 1856 she placed some $20,000 of this money in the hands of Joel Stone for management, investment and

re-investment. Up to the time of the death of Stone they never had a full and complete settlement, and there was, at that time, in his hands a large sum of securities and money, which constituted the plaintiff's entire estate. The referee found that there was, in the hands of Stone, to be accounted for, on the 1st day of January, 1885, the sum of $118,257.-55; that after the death of Stone, and on the 7th of May, 1886, the defendant turned over securities, which the plaintiff received, to the amount of $60,520, and judgment was entered against the defendant for the balance, amounting to $69,136.83. From that judgment the defendant appeals.

*E. A. Nash*, for appellant.

*Marsenus H. Briggs*, for respondent.

BARKER, P. J.—We have reached the conclusion that error was committed by the learned referee in receiving the evidence of the plaintiff in her own behalf relative to the contents of the tin box which she, on the 15th day of November, 1873, received from the hands of the testator and on the same day returned to his custody with the contents thereof, as testified to by her. This evidence standing alone, if believed, would have justified the finding, that on that day the decedent had in his hands certain bonds, most of them negotiable, belonging to the plaintiff, kept separate from his own securities of a like character, amounting to the sum of about $53,000. On a careful and patient examination of all the evidence in the case, we have failed to discover that the fact which this evidence tended to prove was established beyond fair dispute by the other proofs in the case, so that the error might be disregarded by us on this review of the case. It is true that the other evidence in the case tended to prove the fact sought to be established by the incompetent evidence. but the judicial mind cannot say that the fact in dispute was conclusively established by the other proofs.

The only safe rule to be adopted by an appellate court in considering exceptions taken by a defeated party to the reception of incompetent evidence bearing on a material issue is to observe the rule as stated by Chief Justice Church in Foote v. Beecher, 78 N. Y. 158, which is stated in the following words : " If the evidence is slight or irrelevant, or if without it the fact is conclusively established by other evidence, it may be disregarded because it could not have injured the other party." The parties have the right to the judgment of the court founded on competent evidence. The defendant's intestate had in his own right large sums of money which he, for the last twenty years of his life, invested in western securities of the same kind and character as those in which the plaintiff's funds were invested. He and the plaintiff were cousins and they had occasional interviews relative to the nature and character of the investments made for the plaintiff, and when she was absent from the neighborhood where Mr. Stone resided they had correspondence upon the same subject. Occasionally, at the house of the decedent, the securities belonging to the plaintiff were delivered into her possession for examination, and she generally retired with them to a room by herself and made such memoranda concerning the same as she cared to make.

Prior to November, 1873, the decedent had a safe in his house in which he kept his own and the plaintiff's securities. The plaintiff procured a tin box for the purpose of keeping therein securities and papers belonging to herself, which was deposited in the safe, unlocked. The municipal and school bonds, in which a large portion of the funds was at one time invested, were payable to bearer, with interest coupons attached. It was conclusively established on the trial, by evidence independent of that given by the plaintiff, that Mr. Stone, at the time of his death, had a large amount of securities in his possession belonging to the plaintiff, and that he had a safe in his house, and that there was a tin box in which securities and papers were kept belonging to the

plaintiff, and that was deposited in the safe for safe-keeping. From the time that Mr. Stone began to act as the agent of the plaintiff in caring for her moneys, and until April 1, 1868, no investments had been made in western securities, and on that day he delivered to her a memorandum in writing in the nature of a receipt, giving a list of the securities which he then held, which amounted to the sum of $32,192.-97. The referee accepted that statement as being entirely accurate as showing the amount of the securities in the hands of the decedent on that day, and it is admitted that all of them were good and collectible, some $18,000 or $20,000 of them being government securities, worth on the market more than their par value. Subsequent to that time the parties never, together, looked over their matters for the purpose of ascertaining the amount of funds in the hands of Stone, or how the same was invested, nor did the decedent keep a continuous account from that time onward (nor had he before) of the use made of the plaintiff's funds, nor the income derived therefrom, or the losses sustained, so that the moneys remaining in his hands could be readily and definitely ascertained. In November, 1873, the plaintiff went to the state of Wisconsin and resided with friends until 1878, when she returned to this state. She testified in substance that on the 5th day of November, 1873, she visited the house of the decedent and called for the tin box containing her securities, and received the same from the hands of Mr. Stone and took the same into a room in his house, and by herself opened the box, made a list of the securities, and that they amounted in the aggregate to the sum of $52,000, describing each bond and giving the amount thereof.

This is the evidence, claimed to be incompetent, to which the defendant objected, and the same was overruled and an exception was taken. Afterwards a motion was made to strike the same from the record, on the ground that it was incompetent under § 829 of the Code, and the referee denied the motion and the defendant excepted. We give part of

her evidence, in her own language, as the same is printed in the case, viz.: "I never discovered any other papers in the box except my own; I went to Wisconsin in November, 1873; I had been living through the summer at Corfu; before going to Wisconsin I came to my brother's, and I went and asked Mr. Stone to let me take the box and let me look the bonds over, that I was going west; on that occasion he let me take the box and I went in a room by myself and looked through the papers; in the nursery, I think, alone; I opened the box there and examined the papers; I have got that list now. (Witness refers to a list of securities in the box testified to by her on a former hearing, which evidence has been stricken out.) I have had the list in my possession ever since I made it; I think Frank Stone had it a short time.

"Q. Are you able to state, from memory, what securities were contained in that box at the time you examined it? A. I could not state exactly.

"Q. Can you by looking at the list? A. I can.

"Q. Will you take it and state? * * *

"Q. State now, Mrs. Doolittle, what bonds you found in the box on that occasion when you examined them in November, 1873? This was objected to by the defendant on the ground that the witness was incompetent under § 829 of the Code of Civil Procedure. The objection was overruled by the referee, to which ruling the defendant duly objected. A. November 15, 1873, that was the date I left Livonia for Wisconsin; it was before this I took the list; I was preparing to go home with my brother and sister, and in order to prepare for it I came and took the list; they came and made me a short visit, and on the 15th of November I went to Wisconsin; the bonds were (here follows a list of the securities as stated by the witness).

"Q. Is that all the bonds you found in the box on that occasion? A. No, sir; I found the North Carolina bonds; I found the Erie bonds, $1,000; the North Carolina bond was $1,000; the Erie was seven per cent. and the North

Carolina six per cent.; in making this list I compared the list with the bonds; I looked them over a number of times.

" Q. What did you do with the bonds? A. I put them into the box and carried them into the dining-room where Stone was. The defendant objected to what the witness did on the same ground as before. Overruled and exception taken.

" Q. What did you do with the box after taking it into the room where Mr. Stone was? Same objection as before and same rulings. A. I handed it to him and he took it and put it into his safe; on several occasions I had this box and looked over the papers; I was away a good deal and when I came back I would want to see what had been done during my absence; after examining the papers in the box on these occasions I always returned the papers into the box again; I never carried any of the papers away; I sometimes cut off coupons from the bonds, and after cutting them off I handed them back to him; previous to Joel Stone's death I never took that box away from his house; I never took any of the securities that were contained in that box away from his house previous to his death.

" Q. After you examined the box and made the list from it which you have testified to, did you find in the box, at that time, any United States bonds? Objected to by defendant on the same ground as before. Same ruling and exception by defendant. A. No, sir.

" Q. Any Monroe county bonds? Same objection. Same ruling and exception. A. No, sir."

In the list made in 1868, already referred to, there were United States and Monroe county bonds amounting in the aggregate to $25,000. Nothing can be plainer than that this evidence related both to a transaction and a conversation between the decedent and the witness and should be condemned as incompetent under the provisions of § 829, which declares: " Upon the trial of an action * * * a party or person interested in the event * * * shall not be examined as a witness

27

in his own behalf or interest * * * against * * * a person deriving his title or interest from, through or under a deceased person, by assignment or otherwise, concerning a personal transaction or communication between the witness and the deceased person." The policy of the statute is to exclude the evidence of an interested witness concerning any transaction between himself and the deceased person concerning a matter in dispute, which, if decided in favor of the witness or those who claim under him, would diminish the estate of the deceased person. The facts that the witness received from the hands of the deceased the tin box and that she examined the contents and then handed it back to him and that it was at once placed in the safe, standing alone, were quite unimportant, for the reason that it proved nothing which could have been used by the referee as evidence in ascertaining the amount of funds and securities in the hands of the deceased belonging to the plaintiff at the time of his death.

The essential and material part of the evidence was in the statement made by the plaintiff that the box contained securities belonging to her of which she gave a list, and stated the aggregate amount of the same. The whole transaction, together with the conversation, was, in substance and effect, a request by the plaintiff, made to Mr. Stone personally, that he should hand to her the securities which he held in his hands belonging to her, and that he complied therewith and placed in her hands the bonds of which she made a list, and that she returned the same to his custody, and that he received the same as her agent to be accounted for. In short, the evidence, if true, was an admission by Mr. Stone, made to the plaintiff, that he then held in his hands certain bonds which were in the box and that they belonged to the plaintiff and were purchased with her funds. After the repeated interpretations which have been given to this section of the Code by the courts, as to the policy and meaning of the statute, we need not cite any authority in support of our conclusion that the evidence was

wholly incompetent. To disregard the exception taken to this evidence would be to deprive those who are interested in the estate of the decedent of the protection which the statute intended to give them.

The relevancy of the evidence upon one of the most important findings of fact made by the referee is readily observed on reading the series of findings set forth in his report in which the large sum found to be in the hands of the deceased at the time of his death is founded. The decedent did not keep a full and intelligent account showing the sums of money in his hands belonging to the plaintiff while acting as her agent, and in consequence of this omission of duty on his part all the disputes, controversies and uncertainty as to the amount thereof arise.

The referee has found as a fact, that Mr. Stone from 1878 to the time of his death mingled the plaintiff's money and property with his own, without her knowledge or consent, and that for a greater portion of the time prior to October 25, 1878, he kept the plaintiff's moneys and securities in his hands separate from his own, and whenever the same was mingled with his own it was with the plaintiff's knowledge and consent, and that all the western bonds purchased by the said Joel Stone with the moneys belonging to the plaintiff were coupon bonds, payable to bearer, all bearing interest at ten per cent. per annum.

For the purpose of stating an account, so far as one could be stated from the evidence, the referee sought to ascertain the amount of funds in the hands of the trustee on the 1st day of January, 1875, and the kind of securities the same was invested in, and he found the amount to be $58,052.48, and gave a list of the securities which did not include any of the securities embraced in the memorandum of 1868, but did include most of the bonds which the plaintiff testified were in the tin box November 15, 1873, which was only one year and six weeks after the time when the plaintiff testified that she inspected the contents of the box for the purpose

and in the manner stated by her evidence. It is thus made manifest that incompetent evidence was relied upon by the referee to aid him in ascertaining the amount of funds in the hands of the decedent January 1, 1875. We are forced to believe that the referee relied upon this evidence in arriving at that result. In his written opinion, which accompanied his report and is printed in the case, he discusses the question as to the amount of funds actually in the hands of the trustee January 1, 1875, and states the evidence which guided him in fixing the amount, and refers to the list of securities made by the plaintiff November 15, 1873, as being at that time in the tin box as testified to by the plaintiff.

The learned counsel for the plaintiff has made a careful and elaborate argument contending that the referee was sustained in his conclusion without considering or giving any weight to the incompetent evidence given by the plaintiff in her own behalf.

We do not have to consider the question that the same result might have been reached without the aid of that evidence. It is enough to say in sustaining the exception that upon all the evidence in the record, and we may add including the plaintiff's own evidence on the subject, it was not conclusively established that the referee was entirely correct in that finding. He makes a statement to this effect in his opinion. At the same time that Mr. Stone was investing the plaintiff's funds in western securities he was also investing his own funds in the same class of securities. Between November, 1873, and January 1, 1875, the deceased made a list of the securities in a book kept by himself which was given in evidence by the plaintiff, upon which much reliance is placed by the counsel for the plaintiff in support of the referee's finding. But those entries are inconclusive against the defendant, for it was contended by the defendant that this list included securities belonging to the deceased and purchased with his own funds and for himself.

It may be argued that the defendant's contention was fal-

lacious ; it cannot be asserted by the court that the plaintiff's position is conclusively established. The accuracy of the referee's finding as to the amount due from the estate of the trustee to the plaintiff rests mainly on the single finding of fact as to the amount due January 1, 1875. If there is error in reaching the amount due at that time, making the amount too great, then the result based thereon must be necessarily erroneous, and the judgment should be set aside, for the wrong done the defendant is such that it cannot be corrected by any attempt by this court to modify the judgment.

We are unable to see error in the ruling in rejecting the defendant's offer to read in evidence the entries made by the defendant in a book kept by him (called Exhibit No. 5) between June, 1883, and March 10, 1885, under the caption, " cash-book kept for Mrs. Doolittle." It was not kept in the same book as the one the plaintiff gave in evidence against the defendant, nor during the same period of time, nor was it a continuation of that account, nor was any reference made in either account to the other. As we understand the case, the ruling was no violation of the rule of evidence, that, when a part of an account or writing is put in evidence against a party, the latter has a right to have in evidence all or so much of the account or writing as relates to or modifies the part read in evidence.

As there must be a new trial for the reasons stated, we have not examined the question raised by the ruling that the deceased forfeited all claims for commissions or compensation because of his failure to keep an account of his dealings with the funds of his principal, and because he mingled the plaintiff's funds with his own. Whether an agent or trustee for another has forfeited all claims for compensation or commissions because of a breach or neglect of duty on his part depends upon the facts and circumstances attending each case as it arises. It cannot be profitable to the parties for us to discuss that question on the evidence contained in this record.

We have no hesitancy, for the reasons which we have stated, in ordering a new trial before another referee, with costs to the appellant, to abide the final award of costs.

DWIGHT and MACOMBER, JJ., concur.